## A04A1044. BUCHAN v. LAWRENCE METAL PRODUCTS, INC.
### (607 SE2d 153)

JOHNSON, Presiding Judge.

John Buchan alleges that he was standing in line at the Atlanta Hartsfield International Airport when the vinyl retractable tape on a crowd-control barrier became detached from a metal post and struck him in the arm. Buchan sued Lawrence Metal Products, Inc., the purported manufacturer of the Tensabarrier crowd-control system, based on theories of negligence and strict liability. Buchan alleged that Lawrence Metal was negligent in that it failed to exercise reasonable care in the design, manufacture, inspection, and distribution of the Tensabarrier system, that it knew the system was dangerous, that it failed to make reasonable inspections to correct the defects, and that it failed to warn users of the dangers presented by the system.[1] Buchan also alleged that Lawrence Metal was strictly liable because it designed, manufactured, and distributed the Tensabarrier system, and that the system was defective because it lacked an adequate securing method to prevent the straps from becoming detached from the posts when bumped and to have a release system which would cause the system to operate in a safe manner if the straps became detached from the posts.

Lawrence Metal moved for summary judgment. It contended that there was no evidence that it manufactured the Tensabarrier crowd-control system. It urged that another company, Tensator Limited, designed and manufactured the retractable tape cassette, and that Lawrence Metal merely produced the metal posts in which the cassettes were inserted. The trial court granted the motion, holding that Tensator Limited manufactured the retractable tape cassettes, and that Lawrence Metal manufactured the metal posts but merely labeled, marketed, and sold the Tensabarrier system. The trial court

---

[1] This action is actually a renewal action. Buchan originally filed suit against Lawrence Metal and Delta Air Lines, then dismissed that action without prejudice just before the case was tried. This action was filed a short time later.

held that, based on the law concerning mere sellers of products, Lawrence Metal could not be held liable based on theories of negligence or strict liability.

Buchan appealed. Buchan also moved to supplement the record on appeal and to extend the time to file his brief alleging that he discovered new evidence which was not in the record before the trial court and which he believed should be considered. This Court remanded the case for a determination of Buchan's claims regarding the admissibility of the evidence into the record. On remand, Buchan filed in the trial court motions to set aside summary judgment, for sanctions, and for additional discovery. The trial court denied the motions. Buchan appeals.

1. Buchan contends the trial court erred in granting summary judgment to Lawrence Metal when the doctrine of judicial estoppel precluded it. According to Buchan, the trial court should not have entertained Lawrence Metal's motion for summary judgment in this renewal action when Lawrence Metal had been denied summary judgment in the original action. Buchan cites no legal authority to support this argument.

The only legal principle cited in this enumeration of error is that of the "doctrine of judicial estoppel." That doctrine precludes a party from asserting in a judicial proceeding a position inconsistent with a position successfully asserted by it in a prior proceeding.[2] Buchan has not shown that Lawrence Metal asserted a position in the renewal action inconsistent with one it successfully asserted in the original action. In fact, Buchan notes in his brief that Lawrence Metal asserted the exact same position in both actions. And, Lawrence Metal did not succeed in the summary judgment motion filed in the original action.

Moreover, there is nothing in OCGA § 9-11-56 limiting the number of times a party may make a motion for summary judgment.[3] A prior denial of a motion for summary judgment does not foreclose the subsequent grant of summary judgment, inasmuch as an order is subject to revision at any time before the entry of judgment adjudicating all the claims and liabilities of the parties.[4] Denial of a motion for summary judgment decides nothing except that under the evidence before the court at that time there can be no judgment rendered as a matter of law.[5] This enumeration is patently without merit.

---

[2] *Jowers v. Arthur*, 245 Ga. App. 68, 69 (537 SE2d 200) (2000).

[3] *T. L. Rogers Oil Co. v. South Carolina Nat. Bank*, 203 Ga. App. 605, 606 (2) (417 SE2d 336) (1992).

[4] Id.

[5] Id.

2. Buchan contends the trial court erred in granting summary judgment to Lawrence Metal because there are issues of material fact which should be decided by a jury. Specifically, he urges that there was evidence that Lawrence Metal manufactured the Tensabarrier system, that Lawrence Metal failed to warn consumers of the dangerous nature of the product, that Lawrence Metal failed to conduct reasonable inspections or tests of the system, and that Lawrence Metal should have recalled the product upon learning of its dangerous defects. We agree that Lawrence Metal has not shown as a matter of law that it did not manufacture the crowd-control system. Therefore, we reverse the grant of summary judgment to Lawrence Metal.

The Tensabarrier crowd-control system consists of metal posts linked together by cassettes with retractable nylon tape. The tape cassettes are designed and manufactured by a British corporation known as Tensator Limited. The posts are designed and constructed by Lawrence Metal. Using its own design, Lawrence Metal builds the posts out of several components it purchases from different companies, then slides the retractable tape cassettes into slots in the tops of the posts. The system does not have any mechanism to lock the tape cassettes into the posts, or to keep the tapes from snapping back quickly and forcefully if they slide out of the posts' slots for any reason; in fact, the injury complained of here occurred when a passenger ducked beneath a tape, bumped it, and caused it to accidentally slide out of the post and strike Buchan in the elbow.[6]

After the system is produced, Lawrence Metal labels, markets, and sells the Tensabarrier to consumers. Lawrence Metal has the exclusive United States trademark on the retractable tape cassette produced by Tensator Limited.

The distinction between a manufacturer and a seller is an important one, because an action for strict liability can be maintained against a manufacturer, but not against a mere seller of a product.[7] OCGA § 51-1-11 (b) (1) provides, in relevant part, that the manufacturer of personal property is liable in tort to any person who may reasonably be affected by the property and who is injured because the property when sold was not merchantable and reasonably suited to the use intended. In a product liability action based in whole or in part on strict liability in tort, such as this case, a product seller is not a manufacturer as provided in OCGA § 51-1-11 and is not liable as such.[8] A product seller is a person who, inter alia, sells, distributes, or

---

[6] After Buchan's injury, Lawrence Metal began marketing a version of the Tensabarrier which did have a locking device.

[7] *Dean v. Toyota Indus. Equip. Mfg.*, 246 Ga. App. 255, 256 (1) (540 SE2d 233) (2000).

[8] Id.

assembles a product pursuant to a manufacturer's plan, intention, design, specifications, or formulation.[9]

It is undisputed that Lawrence Metal does not have a role in the design or production of the retractable tape cassette. It is also undisputed that Lawrence Metal designs and manufactures the posts which comprise a vital part of the system. Although Tensator Limited intended that the tape cassettes be attached to posts, that company was not involved in the design of the posts. According to Lawrence Metal's former president, Stephen Lawrence, Tensator Limited "didn't really care what we mounted their head on. That was up to us. So we selected one of our posts that we thought would be most suitable for the Tensabarrier."

In building the posts it designed, Lawrence Metal buys separately from five different companies the cast iron base, the finished shell, the vertical tube, the interior pipe, and the nut which comprise the posts. Lawrence Metal then assembles these components and installs the retractable cassette tapes purchased from Tensator Limited. When asked on deposition whether Lawrence Metal manufactures the posts, Lawrence deposed that "[w]e certainly create the product for sale to dealers and users. But I'm not sure that I can definitely say whether we are or are not a manufacturer."

Lawrence admitted that the Tensabarrier crowd-control system consists of both posts and retractable tape cassettes, that Lawrence Metal inserts the tape cassettes into the posts it designs and constructs, *and that both the posts and tapes are needed to make the system work.* Lawrence admitted that Lawrence Metal has a manufacturing department, and that Lawrence Metal assembles the Tensabarrier crowd-control system.

It is not clear from the evidence presented that Lawrence Metal's role in designing and building the posts, and assembling the Tensabarrier system renders it a manufacturer or a mere product seller within the meaning of the strict liability statute. We point out that a defendant can be both a manufacturer and a seller simultaneously; in such a case, it is not entitled to the protections afforded a mere product seller.[10]

In *Alltrade v. McDonald,*[11] we stated that for strict liability purposes, manufacturers are those entities that have an active role in the production, design, or assembly of products.[12] We stated further that the legislature did not intend "manufacturers" to include entities

[9] OCGA § 51-1-11.1 (a).

[10] OCGA § 51-1-11.1 (a), (b).

[11] 213 Ga. App. 758 (445 SE2d 856) (1994).

[12] See id. at 760; *Nelson v. C. M. City, Inc.,* 218 Ga. App. 850, 851 (1) (463 SE2d 902) (1995), rev'd on other grounds, *NEC Technologies v. Nelson,* 267 Ga. 390 (478 SE2d 769) (1996).

that had no real role in the creation of products, such as those who merely label a product as their own.[13]

Unlike the defendants in cases such as *Alltrade*, and *Thomasson*, Lawrence Metal had an active role in the production, design, and assembly of the Tensabarrier crowd-control system. The Tensabarrier system consists of the cassettes *and the posts*, and cannot serve its purpose without both components. While Lawrence Metal had no part in the design or assembly of the retractable tape cassettes, it did design the posts necessary to secure the cassettes. It did so with no input from the cassettes' manufacturer. Therefore, there was evidence that Lawrence Metal had a real role in the creation of the *system*. And, in his complaint, Buchan has alleged that the *system*, not just the tape cassette, was defective.

It is this active role in the design and production of the system which distinguishes this case from one like *Buford v. Toys R' Us*,[14] in which we held that a toy retailer that completed the assembly of a partially assembled bicycle could not be held strictly liable for injuries incurred after a manufacturer's weld gave way.

As movant on summary judgment, Lawrence Metal had the burden of showing the absence of any genuine issue of material fact. Considering its role as assembler of the crowd-control system and sole designer and producer of the component intended to hold the retractable tape in place, there is evidence that Lawrence Metal had significant input into the manufacture of the crowd-control system. Lawrence Metal has not shown that it is a mere seller as a matter of law. The trial court erred in granting summary judgment to Lawrence Metal on the claim of strict liability based on its status as a mere product seller.[15]

Given our holding that Lawrence Metal has not shown that it was a mere seller, the trial court's ruling that Lawrence Metal is entitled to summary judgment on the issues of negligent manufacture, negligent inspection, and negligent failure to warn, based on Lawrence Metal's status as a mere seller, must also be reversed.

3. Lawrence Metal urges that it was entitled to summary judgment based on Buchan's failure to present evidence of a defect. This

---

[13] See *Alltrade*, supra (defendant was a mere seller where its name was stamped on ladder built by another company, and defendant did not assist in design, testing, inspecting, or assembly); *Thomasson v. Rich Products Corp.*, 232 Ga. App. 424 (502 SE2d 289) (1998) (defendant was product seller when bagels sold under its name were baked by another company, shipped to it in sealed containers, reshipped without repackaging, and defendant did not participate in the manufacturing process).

[14] 217 Ga. App. 565, 566 (1) (458 SE2d 373) (1995).

[15] See *Dean*, supra.

issue, however, was not asserted in Lawrence Metal's motion for summary judgment. The issues that must be rebutted on motion for summary judgment are those raised by the motion.[16] Accordingly, in responding to Lawrence Metal's motion, Buchan had no obligation to present evidence on or to argue against this unasserted ground.[17] We will not consider whether summary judgment in favor of Lawrence Metal would have been proper based on an issue not raised in Lawrence Metal's motion for summary judgment before the trial court.

4. Based on our holding in Division 2, the issue of whether the trial court should have set aside the grant of summary judgment based on newly discovered evidence is moot.

*Judgment reversed and case remanded. Smith, C. J., and Phipps, J., concur.*

DECIDED NOVEMBER 1, 2004 —
RECONSIDERATION DENIED NOVEMBER 19, 2004 — ▮▮▮▮▮▮▮▮

*Baum & McGahren, Matthew F. McGahren, Andrea M. Johnson,* for appellant.
*Misner, Scott & Martin, Bobby B. Terry,* for appellee.

---

[16] *Graff v. McReynolds & Assoc.,* 248 Ga. App. 26, 27 (1) (545 SE2d 159) (2001).
[17] See id.